JOSEPH EAGER, Appellant, *v.* CHARLES V. CRAWFORD, Impleaded, etc., Respondent.

76    97
115   631
115   632
76    97
144   714

Where money is loaned for the benefit of a business, and is to be refunded absolutely, without regard to the profits; the fact that the lender is to, receive a share of the profits, to apply on the indebtedness, does not make him liable to creditors as a partner; to have that effect, the payment of the advancement must depend upon the profits.

Defendant C. advanced to defendant G. money to purchase the stock and fixtures of a business, which G. stated he could pay soon. C. was secured by chattel mortgage upon the property, conditioned that the sum loaned should be paid on demand, and G. agreed to pay over to him one-half of the net receipts of the business. In an action by a, creditor of G., who sought to charge C. as a partner, *held,* that C. could not be held liable; that the legal presumption was, that the share of the receipts so paid over was to be applied in payment of the loan.

*Leggett* v. *Hyde* (58 N. Y., 272), distinguished.

The testimony of C. and G., as to the arrangement, was conflicting. An attorney, who drew up the chattel mortgage, also drew up papers in the form of an agreement between the parties, which, as he and C. testified, embodied the conversations between them. This paper was not signed. *Held,* that the paper was properly received in evidence as part of the *res gestœ,* and as showing how the parties, at the time, understood the arrangement.

(Submitted December 20, 1878; decided January 21, 1879.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, affirming a judgment in favor of defendant Crawford, entered upon a verdict.

This action was brought to recover of defendants, who were alleged to be partners, on account for goods sold.

Defendant Campbell alone defended. His evidence was to the effect that he loaned to defendant, Goetchius, $2,500 to purchase a business in New York city, carried on at a place called "Windsor Lunch;" that he was to be secured by a chattel mortgage upon the stock and fixtures; that G. stated he could soon pay back the money, and would turn over half the net receipts of the business. The chattel mortgage was executed and delivered; it was condi-

tioned for the payment of the $2,500 loaned, with interest, on demand. The attorney who drew the chattel mortgage, and other papers, also drew up an agreement for the parties to sign, which he and Crawford testified contained the agreement, as stated in the conversation between the parties. This was not executed, but was presented to Goetchius for his signature, and retained by him. Said paper was offered and received in evidence, under objection and exception, by plaintiff's counsel.

The material portions of said paper are as follows:

"Whereas the said party of the second part did, on the 17th day of March, 1875, loan to said party of the first part, the sum of $2,500, and, as part security for said loan, said party of the first part did, on said 17th day of March, 1875, execute and deliver, to said party of the second part, a chattel mortgage on certain goods and chattels in the premises at No. 395 Broadway, in the city of New York, known as the Windsor Lunch; and

Whereas, said goods and chattels are not deemed of sufficient value to be an ample security for said loan; now, therefore, in consideration of the premises and of one dollar in hand paid by said party of second part,

This agreement witnesseth, that said party of the first part hereby agrees to give to said party of the second part, on the first day of each and every month hereafter during the continuance of this agreement, one-half of the net receipts of his said business, which he shall or may carry on at said 395 Broadway, without any deduction whatever; and the said party of the first part hereby further agrees to keep a true, just and correct account of all moneys received or paid out by him in connection with his said business, and on the first day of each month hereafter to render a true and correct statement of said account to said party of the second part.

And it is hereby expressly agreed between the parties hereto, that the said party of the second part shall in no way be liable, or to be held responsible for the indebtedness

or losses that shall or may accrue on account of said business of said party of first part, nor shall he be, or considered to be, a partner in said business in any manner whatever. And the said party of the second part agrees that if the one-half of said receipts, which shall be paid him as hereinbefore provided, equal or exceed the amount of interest which shall be due on the said chattel mortgage, that then he shall not demand interest on the same; but if the said receipts be less than the amount of interest due, then said party of the first part agrees to pay said party of second part the difference between the amount of said receipts and the interest due." ·

Goetchius was called as a witness for plaintiff; his testimony was to the effect that Campbell put in the money as an off-set to witness' services, he to carry on the business in his own name, and they to divide the profits. The court charged, in substance, in reference to said paper, that although not binding upon the parties, as it would have been if it had been signed, yet it was admitted as part of the transaction, and as some evidence upon the question how the parties then understood the transaction, and was to be considered in connection with the other evidence. That it was the duty of the court to consider what would have been the effect of the paper if executed; that it would have amounted to an agreement to pay the $2,500 and interest by the devotion of one-half the net receipts of the business to that purpose, if it more than paid the interest, then the surplus to be applied toward payment of the principal; that it "does not amount to a partnership agreement at all;" that the conveyance of the property to Goetchius alone, the mortgage and this paper, all point in the direction of a loan, not a partnership. To these portions of the charge plaintiff's counsel duly excepted. The court charged, in connection with them, that if the jury believed that Crawford was to receive any portion of the profits over and above the interest on the money, which was not to go in extinguishment of the principal debt, then defendant was liable.

Further facts appear in the opinion.

*Jesse Johnson*, for appellant. If Crawford advanced the money as a loan, on the understanding that half the net receipts were to come to him for the use of it, this would make him liable as a partner to third persons. (*Leggett* v. *Hyde*, 58 N. Y., 272, 276.) It was error to receive in evidence the unsigned paper offered by respondent. (*Flood* v. *Mitchell*, 58 N. Y., 507.) The court erred in charging the jury as to the meaning and effect of this paper, and in withdrawing it from the consideration of the jury. (Wells on Ques. of Law and Fact, 57, § 49; *McKeon* v. *Wagenblast*, 2 Grant's [Penn.] Cas., 365; 2 Harris, 208; *Overton* v. *Tracy*, 14 S. & R., 330; *Watson* v. *Bland*, 12 id., 136; *Gardner* v. *Clark*, 15 Barb., 538, 550, 551; 8 Conn., 127; 11 Wheat., 59; *Reynolds* v. *Richards*, 2 Har. [Penn.], 205, 208; 1 Greenl. on Ev., §§ 275–279; *Jennings* v. *Sherwood*, 8 Conn., 127.) The advance by Crawford, as between him and Goetchius, may have been a loan as between themselves, no partnership existing, yet the arrangement might have been a partnership as to third persons. (*Leggett* v. *Hyde*, 58 N. Y., 272, 276; *Man. Brass Co.* v. *Sears*, 45 id., 797; *Greenwood* v. *Brink*, 1 Hun, 228.)

*William A. Coursen*, for respondent. The unsigned agreement was properly received in evidence. (*Shotwell* v. *Mali*, 38 Barb., 469; *Binsse* v. *Wood*, 37 N. Y., 532.)

MILLER, J. The amount advanced by the defendant Crawford was secured by a chattel mortgage upon Goetchius' personal property, payable on demand, with interest, which upon its face showed an indebtedness to Crawford. The testimony of Crawford, in reference to the understanding between him and Goetchius, which, it is claimed, if true, shows a partnership as to third persons, establishes that Crawford loaned Goetchius the sum of $2,500, which was secured by the mortgage, and Goetchius promised to turn over to Crawford one-half of his net receipts. Crawford swears that Goetchius said he could pay it back soon, and

the legal presumption is that the receipts were to be applied in payment of the money borrowed. He expressly refused to participate in the profits; and assuming his statement to be true, the transaction was a mere loan of money secured by a chattel mortgage. Under such circumstances, there is no ground for claiming that Crawford was liable as a partner to third parties, within the case of *Leggett* v. *Hyde* (58 N. Y., 272, 276), which is relied upon by the appellant. The text at the last page of the case cited, does not hold that, where money is loaned and to be refunded absolutely without regard to the profits, a partnership exists. To have that effect, the payment must depend upon the profits. If the lender is to be paid at all events the contract does not create a partnership: (*Everett* v. *Coe*, 5 Denio, 180.) In the case at bar, the conversation about payment out of the receipts did not restrict the right to enforce the mortgage on demand, and was not an agreement to pay out of the receipts as profits, in any sense. It rested entirely with Crawford to determine when he should proceed and collect the money which he loaned under the mortgage, and there was no valid contract to prevent its enforcement accordingly.

There was no error, I think, in the rulings or in the charge of the court as to the unsigned paper introduced in evidence by the respondent. It was drawn by the attorney who drew the other papers. I agree with the opinion of the General Term, that it was a part of the *res gestæ*, and also bore upon the testimony of the plaintiff, in reference to Crawford's admission to him, and upon these grounds was entirely competent. So also it was admissible, under the circumstances, for the purpose of showing how Crawford and Goetchius then understood the arrangement; and the charge of the judge, in this respect, was not erroneous.

The court was right in charging the jury in regard to the effect of the paper, if it had been signed, and that it did not amount to a partnership, but was simply an agreement that Crawford should take one-half of what was received and apply it to the payment of Crawford's debt; and if it more

than paid the interest, then the surplus should be applied upon the principal, and extinguish it, as far as it went. Such, I think, was the fair construction of the writing, upon its face. It was somewhat loosely drawn, and evidently did not express the entire contract ; but enough appears, to indicate that it did not contemplate a partnership, or any division of the profits as partners, but a payment of the claim of Crawford, and, as the judge upon the trial remarked, that paper would not make him a partner.

The charge of the judge, as to the effect of the papers, that all the papers assume the form of a loan, and in regard to the instrument assigning the chattel mortgage executed to Goetchius by Florence who bought the business of Goetchius, that it still carried out the theory of a loan, was not, in the form presented, liable to objection, being qualified by the remark that if the real understanding was that Crawford should participate in the profits, as such, then it could constitute a partnership ; otherwise not.

The papers, on their face, bore evidence, I think, that a loan was made by Crawford without any design to form a partnership. The chattel mortgage was made upon condition that Goetchius should pay the sum named therein, which bound Goetchius to liquidate the same, and rendered him personally liable therefor ; and it does not detract from the obligation because no notes were given at the time, nor does that fact show, in any way, that no loan was intended.

The whole case, upon the question whether the defendants were partners, was properly submitted to the jury, upon testimony which was somewhat conflicting ; and as no legal error is manifest upon the trial, there is no ground for disturbing the decision.

The judgment should be affirmed.

All concur.

Judgment affirmed.